Good afternoon. We'll be hearing argument this morning in case 22-99006 Clarence Dixon v. Shinn. We appreciate counsel making themselves available on such short notice, recognizing time sensitivity. And Mr. Zuckerman, we're pleased to hear from you. Make sure you unmute. Eric Zuckerman Thank you, Your Honor. Good afternoon. My name is Eric Zuckerman and I represent Clarence Wayne Dixon. May it please the court. The first issue I'd like to raise is that the district court below has short-circuited the review. There's no dispute between the parties that this is a first-in-time habeas petition that was timely and raises a newly ripe Ford claim. Yet the district court short-circuited Mr. Dixon's right to a full and fair habeas review by conducting its review in under 24 hours and in violation of the rules governing 2254 cases. What more was the district court supposed to do, just given the timing? I mean, to file an opening brief here. And so I think I'd be more interested in knowing about the merits of the claim. Eric Zuckerman Certainly, I can move to the merits of the claim. Judge Goldberg Mr. Zuckerman, I just want to make sure. Your argument is that you get to bring this Ford claim, but you couldn't bring the Ford claim until you had the death warrant. And that means that you will always be able to get a hearing under your, which means that we will always have to issue a stay, which means that no execution could ever go forward. That argument just seems to me to have premises that lead to such an absurd conclusion that they can't possibly be correct. Eric Zuckerman Just in this case, where the state court found that we met our threshold burden to show that we were entitled to a hearing, there is a real issue here about Mr. Dixon's competency. So I think this is different from a case where no hearing was granted. But I don't want to waste the court's time, and I'm more than happy to move to the merits. Judge Goldberg I agree with Judge Brassett. We're probably better off going to the merits. Eric Zuckerman Thank you. Both experts who testified at the hearing agree that Mr. Dixon's beliefs surrounding his criminal case meet the DSM-5 definition for delusions. Dr. Vega, the state's expert, testified that Mr. Dixon is nonetheless not delusional because his beliefs do not meet Dr. Vega's own personal of delusion. And in his opinion, the DSM definition is wrong. The state court ultimately agreed with Dr. Vega, making the finding that Mr. Dixon did not prove his beliefs are delusional, instead characterizing them as arguably delusional, or instead as evidence of Mr. Dixon's belief in judicial bias, but not in a delusion. The federal district court found there is no doubt that Mr. Dixon's concept of reality is flawed by his delusional belief that the courts have denied relief on his claimed legally valid NAU issue for reasons unrelated to his merits. I can now. All right. Okay. I don't think my microphone was working. My reading of the state court decision is that it found that your client has delusions as to why the argument that he is advancing regarding his conviction, that he has delusions about why that argument is not being accepted. But that doesn't mean that he has delusions about why the execution has been ordered. It seems to me that's a correct reading of Supreme Court law. So why is the state court wrong about that? The state court made a factual finding that Mr. Dixon's delusions are only, it did not find that Mr. Dixon has delusions. It just said that he has arguably delusions. And then it provided an alternative explanation for the delusions for Mr. Dixon's belief, not that they are delusional, but that Mr. Dixon believes that the judiciary is just biased. But that's not what the medical evidence presented by both experts established. The medical evidence presented established that Mr. Dixon's belief meets the DSM criteria for delusions. And the state court did not consider evidence of delusions in making its ultimate opinion because it did not make a finding that Mr. Dixon had established that he was delusional. Counsel, delusions is one of the criteria in the DSM for schizophrenia. In fact, it's listed as number one under A, and you have to have two of the five things, including delusions and hallucinations. But if just because you're delusional and have hallucinations, that would mean that you have schizophrenia. Are you arguing that just because you have schizophrenia, that you are no longer qualified to be executed? Absolutely not. And case law is clear. What the court must look at is the prisoner's ability to rationally understand the reasons for the state's execution in the context of his mental illness. That goes back then to Judge Forrest's question that there doesn't seem to be any evidence that I can find. And I've read the transcripts of the hearing. I've read all of the reports. I don't see the evidence that he is delusional about the reasons for his execution. He is delusional about the question of the NAU non-officer arresting him and his right to fruit of the poisonous tree. But we hear arguments all the time where I say to myself, euphemistically, gee, that's nuts or that's crazy. But we don't report lawyers to the state bar for you know, not a sound argument. And this is a very important point because it's a common mischaracterization of the argument by the state. The delusion at issue here is not the factual basis of the NAU claim. It's Mr. Dixon's belief that the United States Supreme Court, the Court of Appeals, the Arizona Supreme Court, and the trial level court have all conspired to deny the it to be meritorious. And as a result, they need to deny his claim in order to protect other agencies, state agencies from embarrassment. That is the delusion. The standard here, of course, we're under AEDPA. And so we're asking, is this objectively unreasonable? And what's the argument that this is objectively unreasonable? The trial court saw a distinction. There's a distinction between delusion about success on a legal theory and lacking rational understanding of an execution and the reasons for it. And Dr. Vega testified there is a distinction between those two. And the state trial court had proceedings on this and heard from those experts and found Dr. Vega more persuasive on this and explained that. So I understand you have disagreements with it, the standard is objectively unreasonable. It was objectively unreasonable for the competency court to rely on Dr. Vega's testimony where he never asked Mr. Dixon why he believes he was being executed. Only saw him once for 70 minutes and over video, which contradicts best practices for conducting these types of evaluations. Never asked any follow up questions to any of the important questions related to the issue that he did ask Mr. Dixon. Whereas Dr. Patino asked Mr. Dixon squarely over the course of four different visits in several different ways, why he believes he was being executed. And each time Mr. Dixon talked not about the crime, but about his belief, deep belief in this judicial conspiracy to silence him in order to protect other state agencies. And Dr. Vega, the reason that it was so unreasonable is that even the state's expert Dr. Vega testified that Mr. Dixon is fixated on this belief and that it meets the DSM-5 criteria of delusions. But the state court failed to make a finding that this was delusional and failed to consider it as a delusion when making an ultimate decision. And for failing to consider it as the reasons for his execution in context of his mental illness, because it ignored the various symptoms that pollute his- Yeah. Thank you. So counsel, is there any other evidence other than the NAU argument that he is delusional? And by the NAU argument, I would include the point that you've been making that there's a conspiracy among judges, lawyers, and others to deny his claim. Is there any other evidence of delusion in Mr. Dixon's behavior? All of Mr. Dixon's delusions that are apparent focus related to the issues in his criminal case. But what I would point the court to is Mr. Dixon's most recent writings, where he has filed to have the Arizona Supreme Court justices disbarred, accusing them of committing a homicide against him, characterizing it as an extra- Counsel, I've reviewed, I've seen a lot of pro se material. Sometimes they're represented by counsel, but they want to contribute anyway. And I see a lot of this conspiracy stuff. I think it's very rare that you would go to prison and say, how many of you guys really did what you're accused of here? And have a whole bunch of people raise their hands. Many, many, many of our prisoners believe that they are unjustly there, that the system has conspired against them. That may be delusional. Does that mean that they're all maybe not qualified to be executed? Does that make them all delusional in the sense that you're arguing here? No, the difference is that you must look at Mr. Dixon's delusions and his conspiratorial beliefs in the context of his schizophrenia as required by Panetti. And when you look at his extrajudicial killing committed upon him as a result of his execution, his delusions really come to the surface. I think another important issue here is the fact that the testimony at the hearing that was presented is that when a neurotypical or a normal person is able to consider, when they're prompted to consider their execution and the reasons for it, they're able to rationalize society's reasons for that execution, consider the severity of their not. But Mr. Dixon's thought process as a result of his schizophrenic delusion is contaminated. And every time he... Counsel, I mean, from your own expert, the statement that was recited in the state court's decision is your client saying that while he thinks it's unlawful, the execution is unlawful because he thinks the evidence should have been suppressed, etc. He understands that they're trying to execute him for this murder. So, I'm still seeing a gap in the reasoning here. I mean, Madison tells us, the Supreme Court tells us in Madison that the inquiry is whether the prisoner can rationally understand the reason for the death sentence. He may think the death sentence is illegal for whatever reason, but that doesn't mean he doesn't understand why it's happening or why it was imposed. The difference is that as Dr. Patino testified at the hearing, he's aware of the reasons that have been told to him. He's been told that the state intends to execute him for the murder, but there's a sentence that's quoted in Dr. Patino's report. They say they want to kill me for this murder, but I don't believe that. I know they want to kill me to silence me because of the NAU claim. Mr. Dixon's statement that the court relied on and many of the statements that the Superior Court relied on in its decision all show Mr. Dixon's awareness of what he's been told, but none of them speak to his rational understanding of society's desire to vindicate its interest as a result of the severity of his crime. Dr. Mesco Patino probed that deeply, and the state's expert, Dr. Vega, never even asked Mr. Dixon about that. Counsel, as I recall, both Dr. Mesco Patino and Dr. Vega testified that Dixon seemed to be aware of time, place, that he was spatially aware of where he was, what time it was. He had a conversation about his views about the job that President Biden was doing. He certainly knew who was President of the United States and was aware of things going on. In the context of this, Dr. Vega said that Dixon told him that he didn't remember the crime, and the explanation for that seems to be an alcoholic blackout, but that he was well aware that his DNA had been linked to the victim. He said, I must have done it. If I did it, then they would be entitled to Dr. Vega that. Yes, there are several reasons to doubt that. The first is that Dr. Vega testified that he was very careful to make sure that every direct quote that he used in his report, he put quotation marks around it, and that quote doesn't have quotation marks around it. Dr. Vega testified that that's his characterization of what Mr. Dixon said. Okay, but is there any reason to doubt that that characterization is accurate? Is there clear error here on somebody's part? I mean, that would be the standard in federal court. We've still got an EDPA overlay to get there, but even in federal court, we would have to find that that was clearly erroneous for the district court to believe when Dr. Vega said to him. We don't have Mr. Dixon on the stand here for whatever reason. It might have been really useful, but all we've got is what Dr. Vega and Dr. Amesco Patino said Dixon said to them. I would invite the court to, we filed an audio transcript, an audio recording of the hearing, and I would invite the court to listen to Dr. Vega's testimony because all of his methods are out of whack with what is required for conducting an evaluation at this point. To see someone for 70 minutes over video once, where you don't know who else is in the room, which he testified to, you don't know if the defendant is shackled, is absolutely insufficient and it's out of line with what the medical community requires. Let me go back to my question. Is there any reason to believe that Dr. Vega has mischaracterized what Mr. Dixon told him? You've been arguing that Mr. Dixon may have told him things for reasons that could have been countered if he had not been shackled and if it had been an in-person. Is there any reason to believe that Dr. Vega has misrepresented what he heard Mr. Dixon tell him? Maybe no proof that he directly misrepresented it, but that Dr. Vega testified that he doesn't trust his memory, that he's not all there, some really questionable things about an MRI of his own brain. It's all laid out in our brief and it is all in the recording. And the trial court heard Dr. Vega testify and he heard all of those things and he still credited at least this part as to what Dixon told him about the reasons why he was being executed. And that's why we believe that the most obvious example of clear error here is the trial court finding that Mr. Dixon did not establish his delusions and his failure to consider Mr. Dixon's rationality in the absence of considering uncontested evidence that Mr. Dixon's beliefs meet the DSM-5 criteria for delusions. Mr. Zuckerman, we've kept you on the run, but we will go ahead and put some time up for rebuttal just so that you have a chance to respond and we'll give you three minutes when when your opposing counsel is done. We'll hear from you, Mr. Sparks. Thank you. Thank you, your honor. The state court's decision was objectively reasonable under AEDPA. First, ultimately, Dixon's claim that he's incompetent to be executed comes down to or is based on his belief in why his legal theory is being rejected by the courts. But the reason he believes his legal theory is being rejected doesn't answer the question of whether he's incapable of forming a rational understanding of the state's reason for carrying out his execution. And I think that point goes to why the question of whether or not his belief is characterized as a delusion also doesn't answer the question of whether Dixon is capable of forming the rational understanding under the Panetti standard. Looking at the record, I think it's clear that Dixon's belief as to why his claim is being rejected, whether that's because he or avoid embarrassment, his reasoning and why he thinks that's being rejected doesn't show that he doesn't understand the reason for his execution. The statements that he made to Dr. Vega that were listed in Dr. Vega's report and also testified to at the evidentiary hearing show that Dixon is very aware that he is going to be executed because he was convicted of first degree murder. And not only that he's aware, but that he understands the nature of the connection between that crime and the execution. The statements that support that finding of competency by the state court include the fact that he wished he was in another state that doesn't have the death penalty because he understands he wouldn't be executed for murder if he was in a state that didn't have the death penalty. He stated that he would bring the victim back if he was capable of it. And I think probably most importantly, as pointed out by the state trial court judge who presided over the competency hearing, Dixon's statement that he would feel a sense since he claims not to have any memory of having committed the crime, he would feel a sense of relief on his way to execution if he had a memory. And also his statement that if he did intentionally kill the victim, that maybe he would deserve the death penalty. All of those statements show that Dixon understands the connection between his crime and the punishment that's going to be carried out. As far as the argument that his writings characterizing the execution as an extrajudicial killing, showing that he doesn't understand, that's not what it shows. I think if you look at that in context, it shows that he believes his conviction is unlawful. In other words, Dixon's beliefs go to why he thinks his conviction should be invalidated. He obviously understands that if his convictions are invalidated because they're unlawful, then he won't be executed. How different is this theory than what was presented earlier in the earlier round of habeas proceedings about his competency to stand trial and represent himself? It appears to be the same theory that he's been asserting throughout all of those proceedings. As the district court previously found in the habeas proceeding, and as this court found in its opinion affirming the district court's denial of habeas relief, the fact that Dixon had these faulty or untenable legal theories as far as why his conviction should be invalidated didn't even suggest in that context to trial counsel or the should be looked into. In another context, this court and the district court found that Dixon's belief in that theory wasn't enough to even trigger an investigation into whether he was competent. Here, it's essentially the same theory that he's asserting. Because he has these beliefs as to why his legal theory is being invalidated, he says he's incompetent to be executed, but there's really no difference other than the context competency to be executed versus to waive counsel and represent himself. Ultimately, it's the same factual basis, I think, for his claim in both circumstances. Mr. Dixon made some critiques of Dr. Vega about the length of time he examined him, the fact that it was done by video. Can you respond? Sure. I think that at most, those types of criticisms would go to Dr. Vega's diagnostic impressions. It's clear from the competency judge's ruling that the competency judge didn't really put much stock into the diagnoses that Dr. Vega reached or his opinions about the correct diagnosis for Dixon. What was important from Dr. Vega's evaluation to the state court here was his relaying the statements that Dixon made to him over the course of their conversation. And the methods, I don't think, are at all relevant to Dr. Vega's ability to report what Dixon said to him during the evaluation. I agree with you that I'm not sure that the state court puts as much strength in the Vega evidence as Dixon's counsel argues. And I'm just wondering, even if we were to set aside Vega altogether, do you think that the outcome would be different? No, it would not. I mean, it seems like the state court was saying that this is Dixon's burden, and he didn't meet his burden with the evidence that he presented. And so, whether or not Vega was qualified or a great witness or whatever, sort of seems beside the point. I would agree, Your Honor. I think that it's clear from the trial court's order that it would have denied the competency claim based on the evidence presented by Dixon alone, because it's clear that the court did not find that the delusions that Dr. Mescopatino discussed rendered Dixon incapable of understanding or having a rational understanding of the reason for his execution. So, I agree that even setting aside everything that Dr. Vega testified to, the outcome here wouldn't change. Mr. Dixon argued that the trial court acted unreasonably in taking into account the intelligence level of Mr. Dixon, including as reflected in some of his writings. And I'd like to hear your response there. There was nothing unreasonable about the trial court taking that into account. I think looking at the court's entire decision in context, it's clear that that was nothing approaching the sole basis for the court's ultimate conclusion. I think it's reasonable to take that into account as part of the overall context. The court is trying to develop an overall understanding of Dixon's mental functioning and his abilities and the extent to which any mental illness might affect his thinking. So, I think in taking that overall view, it was appropriate for the trial court to take those factors into consideration as well, at least as part of the overall context of Dixon's mental health. If the court has no further questions, we believe the record is clear here that the state court's decision was reasonable based on the facts before it. The court applied the correct legal standard from Supreme Court case law and the district court did not err by finding no violation under Section 2254D. Let me see if my colleagues have further questions. Thank you very much, Mr. Sparks. Mr. Zuckerman, let's return to you. Thank you, Your Honor. I'll try and speak quickly. One thing that was raised is whether this is the same theory that has been raised in the past. These are very distinct. Mr. Dixon has never raised the fact that his delusion is related to a judicial conspiracy to deny the claim. It has been about the factual basis of the NAU claim. Just to be clear, I mean, there is some relation, it seems. A lot of this seems to spawn from this theory about the Northern Arizona University campus police and this legal argument about suppressing the DNA. And the fact that people are ignoring the argument seems to sort of be almost like the back end or the tail of what's really the same ultimate thing. I think the evidence shows he's delusional about both. He's certainly delusional about the factual basis of the NAU claim, but that's not what the evidence was presented to demonstrate why he can't rationally understand the reasons for the executions, because he perseverates on this issue about why this claim is being denied. And that's never been considered by a court before. I do want to say, Dr. Vega, the state's expert, the question was asked about Mr. Dixon's intelligence as shown in the writings. Dr. Vega relied on those writings and then testified he never even looked at them. He never even reviewed them. Mr. Sparks made the assertion that- I'm sorry, could you go past that one more time? Are you saying that Vega relied on that but didn't look at them? That's what he said. He said he relied on those to demonstrate that his cognitive function is intact. And then when asked, did you read them? He said, I barely glanced at them. No. So- Well, that doesn't mean he didn't read them. I mean, if he looked at them briefly, you can look at the- I looked at some of his writings, including the conspiracy article that he wrote in 2001. You don't have to read it in depth to see that it's very articulate and very well written. The question that was asked was, did you review those articles? And his answer, I think, based on my memory was, no, I barely glanced at them. So- But did that preclude the trial court itself from relying on them? I mean, maybe you're right in your characterization of Vega, I'm not sure, but the trial court made essentially an independent finding. I think what's important here is that we have reliable, proper testimony from a medical doctor on one side. And on the other side, we have testimony from an expert who, putting aside all of the issues with Dr. Vega, never asked Mr. Dixon the ultimate question. He never asked Mr. Dixon, why do you believe you are being executed? So all of his characterizations and assumptions and speculation, they're meaningless because he didn't probe the ultimate issue of fact. All he really did was talk about Mr. Dixon's awareness- There are clearly established law that says that he was required to do so. I mean, people have different methods of examining someone. Lawyers have different methods of examining witnesses. I guess I'm hard-pressed to know that there was one way only in which Dr. Vega could reach his conclusion. I think the evidence of Dr. Vega's testimony at the hearing demonstrates that the trial court's reliance on it was unreasonable, objectively unreasonable. And the question was asked about whether putting aside Dr. Vega entirely, what the trial court would have done. And I think it's said in its opinion that on a preponderance standard, it was a close call. This is a close call to decide whether Mr. Dixon is competent or not. So I would posit that without the testimony of Dr. Vega, the trial court would not have- or the competency court would not have found Mr. Dixon could not meet his burden. Counsel, did Dr. Amesco Patino, did he videotape any of his meetings? He did not videotape his meetings, no. Okay. You've criticized Dr. Vega for destroying a videotape that he made, which he said he did to refresh his recollection, make sure he got the quotes correct. But by the same token, then shouldn't Dr. Amesco Patino have videotaped his meetings? The criticism is not that he- the criticism about Dr. Vega is not about the fact that the recording was created in the first place. It's about the fact that he destroyed it. And then Dr. Vega testifies when I'm talking about what Mr. Vega said, or what Mr. Dixon said, I use exact quotation marks. And all of these statements that are the most damaging statements that the court relied on to rule that Mr. Dixon is competent are not in quotation marks. But in Dr. Amesco Patino's testimony, and his written reports, we have to take at face value the things that he says that Dixon told him, but we don't have a recording of that. Yes, but we also don't have Dr. Amesco Patino saying that he doesn't trust his own memory, which is, I mean, that's Dr. Vega's own testimony. The last point that I think it's incredibly important to make is that Dr. Vega testified that his opinion about whether Mr. Dixon is competent or not, or whether he can rationally understand the reasons for the fate execution is dependent upon his diagnosis, his antisocial personality diagnosis, and his non-diagnosis of schizophrenia. So if the court did not put stock in his diagnosis, then it was unreasonable for the court to rely on Dr. Vega's opinion, whereby his own admission, it cannot be relied upon unless the diagnosis is correct. Counsel? The court says that there's conflicting evidence presented by the two experts. I don't see anywhere in here where the court tries to resolve that, tries to weigh, or balance, or say somebody gets more weight than another. What in here tells you that the state court sided with Dr. Vega over your expert? What tells us that the state court sided with Dr. Vega is two things. One, it's his characterization of Dr. Vega's persuasive. And two, is the fact that he agreed with Dr. Vega by not making a finding that Mr. Dixon's belief about this ultimate conspiracy, the central issue, is delusional. And that's really the issue here, because both experts agreed under the DSM that Mr. Dixon's beliefs are delusional. But the trial court did not consider his beliefs as delusional. And by doing that, it misapplied Panetti, because it used- I guess I'm looking at the state court order. I'm just not sure I can agree with that, because the trial court acknowledged this NAU legal challenge theory, but then just said it's not dispositive of the issue. And the issue is the mental competency to be executed. And so the trial judge essentially found that there was a distinction between the two, and it was a bridge that had to be connected. And he explained in the order why he didn't think it had all been laced up. I think that the reading of the trial court's order demonstrates that the court did not make a finding that Mr. Dixon was delusional, did not consider Mr. Dixon's belief to be delusional, because it characterized it as only arguably delusional, and then provided an alternative explanation. It did not take into account that it was delusional. And then in the next paragraph, the court said, so it's not dispositive of the issue. It's the fact that Mr. Dixon's beliefs are not delusional to the trial court, which contradicts all medical evidence and uncontested evidence under the DSM that the trial court ultimately found that Mr. Dixon is competent. Counsel, is there a reason why you didn't have Mr. Dixon testify? Mr. Dixon is incompetent. He's blind. He's incredibly frail. But wouldn't that have been persuasive to have a trial judge see that? It may have been, but it's difficult to even, when you're dealing with someone who's incompetent, they're also incompetent to make a decision about whether they wish to testify or not. Mr. Dixon was not present at the hearing. Mr. Dixon doesn't really understand the claim, because he lives in his head. He lives in these alternate realities, which is what Dr. Mezqu-Petino testified. He spends most of his, he's legally blind. He spends hours and hours working on these writings, with a stencil, that take days to create. These judicial complaints, he obsesses over them. And then he retreats back into his own mind, where his schizophrenic thoughts run wild. To try and counsel someone like that, about their right to testify, is just exceedingly difficult. We'll let you go over, understandably, Mr. Zuckerman. Let me just confirm that my colleagues don't have any additional questions for you. I don't have any further questions, thank you. Okay, Mr. Zuckerman and Mr. Sparks, I want to thank both of you for your dedication to your clients, and for providing us with such fine advocacy on such short notice. Thank you both, and the court recognizes the time sensitivity associated with this case, and the matter is submitted. This court, for this session, stands adjourned.
judges: BYBEE, BRESS, FORREST